## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LAURA M. HEPPOLETTE,

     Plaintiff,

v.

DFJ VINHOS, S.A. a Portuguese
Corporation, and JESSICA HAULTER,

     Defendants.

CASE NO.: 1:23-cv-05844-JPB

## PLAINTIFF'S RESPONSE TO DEFENDANT JESSICA HAULTER'S MOTION TO DISMISS

COMES NOW, Plaintiff LAURA M. HEPPOLETTE ("Heppolette"), and hereby responds in opposition to the MOTION TO DISMISS[1] filed by Defendant JESSICA HAULTER ("Haulter") and showing this Honorable Court as follows:

### INTRODUCTION

This Court has federal question jurisdiction over this matter because it involves independent and intentional copyright infringements. At its core, this action is primarily focused on DFJ Vinhos' initial infringement of the copyright of the photo of an English Bulldog taken by Heppolette in 2006 and registered

---

[1] Doc. 11

under Registration Number VA 2-367-866 (the "Copyrighted Photograph"). Heppolette also asserts copyright infringement claims and seeks declaratory relief in connection with Haulter's misappropriation of the Copyrighted Photograph and her own infringement of Heppolette's copyright for Haulter's own personal financial gain. Haulter now seeks to dismiss the claims against her for lack of personal jurisdiction.

For the reasons that follow, the Court may properly exercise specific personal jurisdiction over Haulter because (1) she has stated in federal pleadings before the Middle District of Florida that she has a contractual agreement with Heppolette (a Georgia resident)[2] related to the subject matter of this action, and, therefore would have transacted business in Georgia within the meaning of Georgia's long-arm statute; (2) she has committed an intentional tort through the aid of direct communications deceiving and discouraging Heppolette in the State of Georgia from protecting her Copyrighted Photograph; and (3) the exercise of personal jurisdiction over Haulter in Georgia satisfies any due process concerns.

## FACTUAL BACKGROUND

From the outset, Haulter's intention to commercially profit from DFJ Vinhos' use of the Copyrighted Photograph was evident. Indeed, upon first

---

[2] Heppolette unequivocally disputes the existence of this alleged contractual agreement, but there is little doubt that Haulter intends to argue its existence, validity, and enforceability.

learning about the Copyrighted Photograph in connection with the PAXIS Bulldog, Haulter[3] allegedly reached out to a marketing director and stated to Heppolette via Instagram: "We'll get something out of this – even if it's just wine. Haha."[4] When Heppelotte inquired as to what she could do to assist with a forthcoming lawsuit against DFJ Vinhos, Haulter responded: "Totally girl, we gonna get paid!"[5] On or about April 19, 2023, Haulter then proceeded to reach out to an intellectual property lawyer in Florida to review potential copyright infringement claims against DFJ Vinhos.[6] Initially, Haulter stated to Heppelotte's husband "if anything does come out of this, obviously [Heppolette] is included."[7]

Immediately thereafter, Haulter sent deceptive messages to Heppelotte and her husband over Facebook Messenger and Instagram concerning the Copyrighted Photograph. For instance, in an apparent admission that Haulter did not own the original Copyrighted Photograph, on April 19, 2023, Haulter inquired whether Heppelotte had "the original hard drive or file of the photo" or "the original photo."[8] On April 20, 2023, Heppolette's husband responded that he found the original Copyrighted Photograph on Heppolette's Flikr.com

---

[3] At all relevant times herein, Heppolette was a citizen of and domiciled in Cherokee County, Georgia. Haulter knew this fact.
[4] Heppolette Decl. ¶ 4. (Attached hereto as **Exhibit A**.)
[5] *Id.*
[6] *Id.* ¶ 5; Compl. ¶ 46 (Doc. 1).
[7] *Id.*
[8] *Id.* ¶ 6.

account from 2006, shared a link to the same, and further noted it was complete with EXIF data and "all rights reserved" clearly stated in the licensing section.[9] In response, Haulter claimed that her copyright lawyer suggested "taking down the image [Heppolette] [had] on Flickr, so that [DFJ Vinhos] can't say that is where they got it from either. That way, they can't say there were multiple photos available, and the process needs to start again and/or discredit the claim."[10] At all times relevant, Haulter led Heppelotte to believe that she was pursuing the lawsuit on Heppolette's behalf against DFJ Vinhos rather than in Haulter's name.

However, on July 10, 2023, Haulter filed a federal complaint against DFJ Vinhos in the United States District Court for the Middle District of Florida naming herself as the plaintiff and claiming outright ownership of the Copyrighted Photograph (the "Florida Action").[11] Further, Haulter attached an image of the Copyrighted Photograph to her complaint in the Florida Action.[12] This image of the Copyrighted Photograph is the same image appearing on Heppolette's webpage but with Heppolette's personal watermark cropped out.[13] Haulter sent another message to Heppolette in Georgia that the "lawyer was waiting for the image copyright with the [US Copyright Office] to finally

---

[9] *Id.*
[10] *Id.* ¶ 7.
[11] Compl. ¶¶ 56-59 (Doc. 1).
[12] *Haulter v. DFJ Vinhos, et al.*, No. 6:23-cv-01279-WWB-LHP (Doc. 2-11.) (M.D. Fla. July 10, 2023).
[13] Compl. ¶ 60 (Doc. 1).

come in" before proceeding with the Florida Action.[14] Of course, Haulter never advised Heppolette that the lawyer registered the image copyright in Haulter's name rather than Heppolette's as the actual owner of the Copyrighted Photograph.[15] Heppolette's suspicions mounted over Haulter's actual intentions concerning the Copyrighted Photograph and, later, the Florida Action. However, Haulter messaged Heppolette yet again in Georgia that the Florida Action was "not ideal" because "[DFJ Vinhos] fil[ed] a bunch of paperwork to have [the Florida Action] moved to Portugal,"[16] Heppolette was, by this time, weighing her legal options, but she believed the Florida Action would no longer proceed based on Haulter's communications to her and that her intervention in the Florida Action at that time was unnecessary.[17]

After receiving no further updates from Haulter for some period of time, Heppolette checked the Florida Action docket on or about October 17, 2023.[18] Much to her surprise and dismay, Heppolette discovered she had been deceived by Haulter.[19] Rather than the Florida Action ending and moving to Portugal as represented, Haulter actively sustained the Florida Action and entered into a settlement agreement with DFJ Vinhos concerning the Copyrighted

---

[14] *Id*. ¶ 47 (Doc.1), Ex. I (Doc. 1-9).
[15] *Id*. ¶ 49 (Doc. 1).
[16] Compl. ¶ 65 (Doc. 1).
[17] *Id*. ¶¶ 67-69 (Doc. 1).
[18] *Id*. ¶ 70 (Doc. 1).
[19] *Id*. ¶ 74. (Doc. 1).

Photograph.[20] Haulter never mentioned her settlement with DFJ Vinhos to Heppolette prior to Heppolette's discovery on or about October 10, 2023.[21]

On or about October 20, 2023, Heppolette's attorneys contacted Haulter's counsel regarding the revelation of an unauthorized settlement agreement between Haulter and DFJ Vinhos.[22] Although Haulter initially stated no funds had been received from DFJ Vinhos, Haulter's attorney later acknowledged that Haulter had received funds from DFJ Vinhos pursuant to the unauthorized settlement agreement.[23] On October 27, 2023, Haulter's counsel formally responded via letter to Heppolette's allegations and demands for Haulter to disavow ownership of the Copyrighted Photograph and any proceeds therefrom (the "Haulter Response Letter").[24] Therein, Haulter claimed that Heppolette "agreed to split any money received by Haulter" based on a "partially written and oral agreement providing for a 50-50 split."[25] In the Florida Action itself, Haulter has asserted that, "Ms. Heppolette and Plaintiff had an agreement to share Plaintiff's proceeds from this lawsuit essentially as a 'founder's fee.'"[26] Moreover, Haulter continued to assert "she is the copyright

---

[20] Heppolette Decl. ¶¶ 9-10; Compl. ¶ 71 (Doc. 1).
[21] Compl. ¶ 72 (Doc. 1).
[22] Heppolette Decl. ¶ 11; Compl. ¶ 75 (Doc. 1).
[23] Compl. ¶¶ 76-79 (Doc. 1).
[24] Heppolette Decl. ¶ 11, Ex. A. at p. 2.
[25] *Id*. To be sure, Heppollete patently denies that any such agreement with Haulter ever existed concerning a 50-50 split or assignment of the Copyrighted Photograph.
[26] *Haulter v. DFJ Vinhos, S.A.*, Case No. 6:23-cv-01279-WWB-LHP (Doc. 26 at ¶ 2).

owner."[27] Notably, Haulter's Affidavit also does not deny she allegedly entered into a contractual agreement with a Georgia resident concerning the Copyrighted Photograph.[28]

Thereafter, Haulter continued to maintain she owned the Copyrighted Photograph and refused to release funds she received from allegedly selling the Copyrighted Photograph to DFJ Vinhos.[29] Consequently, Heppolette filed the instant action on December 19, 2023 seeking, among other things, a declaratory judgment that Heppolette owns the Copyrighted Photograph and is entitled to damages flowing from Haulter's intentional infringement of the Copyrighted Photograph.[30] The Complaint further alleges copyright infringement claims against DFJ Vinhos.[31]

On January 16, 2024, the District Court for the Middle District of Florida officially closed the Florida Action by entering an order terminating Haulter's Amended Motion to Set Aside.[32] At all relevant times hereto, Haulter knew that Heppolette resided in Georgia – even reaching out to Heppolette with a picture of Heppolette's personal residence when the home was listed for sale in or about September 2023.[33]

---

[27] *Id.* at p. 4.
[28] *See* Haulter Aff. ¶¶ 1-10 (Doc. 11-1).
[29] Compl. ¶¶ 82-83 (Doc. 1).
[30] *Id.* ¶¶ 97-116 (Doc. 1).
[31] *Id.* ¶¶ 85-95 (Doc. 1).
[32] *Haulter v. DFJ Vinhos, et al.*, No. 6:23-cv-01279-WWB-LHP (Doc. 28) (M.D. Fla. Jan. 16, 2024).
[33] Heppolette Decl. ¶ 3.

For the reasons that follow, this Court may properly exercise specific personal jurisdiction over Haulter in this action because she alleges to have conducted business within the meaning of Georgia's long-arm statute by purportedly entering into a contractual agreement with Heppolette and directed communications to Heppolette in Georgia specifically pertaining to the claims at issue in this action. Finally, the exercise of specific personal jurisdiction over Haulter comports with due process because she resides in Orange County, Florida, a bordering state and within the same federal circuit,[34] and knew her acts and communications were directed into Georgia.

## ARGUMENT AND CITATION OF AUTHORITY

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). "Where, as here, a defendant challenges jurisdiction by submitting affidavit evidence in support of [her] position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* However, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's

---

[34] Compl. ¶ 4. (Doc. 1).

affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id*.

Here, Haulter argues this Court does not have general or specific personal jurisdiction over her because, among other things, (1) she does not maintain continuous and systematic contacts within Georgia[35] and (2) her communications directed into Georgia do not relate to any underlying tortious act and Heppolette's harm otherwise arose well before any such communications.[36] At the outset, the Court must apply the relevant law governing personal jurisdiction over nonresidents.

a. Venue under 28 U.S.C. § 1400 (a).

In copyright infringement cases, 28 U.S.C. § 1400 (a) governs the appropriate venue for a plaintiff's copyright claims and provides that venue is proper in any district where the defendant "may be found." *Time, Inc. v. Manning*, 336 F.2d 690, 698 (5th Cir. 1966); accord *Droke House Publishers, Inc. v. Alladin Distributing Corp.*, 352 F.Supp. 1062 (N.D. Ga. 1972). To determine whether a defendant "may be found" within Georgia, a personal jurisdictional analysis that comports with Georgia's long-arm statute and due process concerns is necessary. "[S]tate long arm statutes may be used to establish service of process, venue, and in personam jurisdiction in copyright

---

[35] Haulter Mot. to Dismiss at p. 6-7 (Doc. 11).
[36] *Id*. at pp. 9-12.

infringement cases and the jurisdictional and venue standards found in 28 U.S.C. § 1400 (a) should be applied liberally." *Droke House Publishers, Inc.*, 352 F.Supp. at 1065.

 b. General and Specific Personal Jurisdiction.

 There are two forms of personal jurisdiction the court may exercise over a nonresident defendant – general and specific jurisdiction. General personal jurisdiction "arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether a party had 'continuous and systematic' general business contacts with the forum state." *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F. 2d 843, 853 (11th Cir. 1988). Alternatively, "[i]n a suit arising from or related to [a defendant's] contacts, the court exercises specific jurisdiction over the defendant." *Fraser v. Smith*, 594 F. 3d 842, 845 (11th Cir. 2010).

 Here, the Court may obtain specific personal jurisdiction over Haulter based upon the allegations in the Complaint and supporting evidence. In deciding whether specific jurisdiction exists, the Court looks to Georgia's long-arm statute.

 c. Georgia Long-Arm Jurisdiction.

 Georgia's long-arm statute codified at O.C.G.A. § 9-10-91 provides, in relevant part, that personal jurisdiction can be exercised over any nonresident who:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state….

O.C.G.A. § 9-10-91 (1)-(3). Subsection (1) is applicable to contract actions while the latter two subsections are applicable to tort actions. The exercise of personal jurisdiction in Georgia only "requires a court to find at least one prong of the long-arm statute is satisfied." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F. 3d. 1249, 1260 (11th Cir. 2010).

**(A)    Georgia's Long-Arm Statute Supports The Exercise of Personal Jurisdiction Over Haulter**.

Here, Heppolette can satisfy at least two prongs under Georgia's long-arm statute. *First*, Haulter transacted business in Georgia within the meaning of O.C.G.A. § 9-10-91 (1). This section requires that Haulter has "purposefully done some act or consummated some transaction" in Georgia. *RMS Titanic, Inc. v. Zaller*, 978 F.Supp.2d 1275, 1300 (N.D. Ga. 2013) (quoting *Diamond Crystal Brands, Inc.*, 593 F.3d. at 1260). Notably, Haulter's "physical presence in [Georgia] to perform the act is not required." *Id.* Finally, a nonresident defendant's "mail, telephone calls, and other 'intangible acts' that occur outside of Georgia must be examined to determine whether it can fairly be said that

the nonresident has transacted any business within Georgia." *Diamond Crystal Brands, Inc.*, 593 F.3d. at 1260; *see Rice v. PetEdge, Inc.*, 975 F. Supp.2d 1364, 1368 (N.D. Ga. 2013) ("Transacting any business by mail, telephone, or the internet will suffice.") Here, Haulter's communications allegedly form the terms, in part, of the Alleged Agreement.

Although Haulter may not have physically been present in Georgia at the time of the Alleged Agreement, she claims the relevant communications at issue form the basis for an Alleged Agreement "to split any money received by Haulter [from the Florida Action]" based on a "partially written and oral agreement providing for a 50-50 split."[37] Presumably, if any such agreement existed, partial performance would necessarily involve payment into Georgia and cooperation by Heppolette to provide relevant and material documentation from Georgia. Whether the transaction was ultimately consummated is immaterial for jurisdictional purposes. *See Aflac, Inc. v. SDT Air, LLC*, 978 F.Supp.2d 1304, 1311 (M.D. Ga. 2013) (finding nonresident defendant subject to personal jurisdiction in Georgia where e-mail correspondence and communications involving the negotiation of an aircraft sale were directed to Georgia corporation although sale never formalized); *see also, Weathers v. Dieniahmar Music, LLC*, 337 Ga. App. 816, 821 (2016) (finding nonresident

---

[37] *Id.*

defendant subject to personal jurisdiction in Georgia where parties had a co-publishing agreement involving continued use of artistic works and providing for payments in exchange). Although Heppolette disputes the existence of the Alleged Agreement and does not bring a claim for breach of contract, her claim for declaratory judgment rests exclusively on Haulter's claim of ownership and interest in the Copyrighted Photograph arising out of the Alleged Agreement.[38] Accordingly, Haulter's allegation that an Alleged Agreement exists between the parties, in addition to multiple communications directed into Georgia regarding the Alleged Agreement, is sufficient to meet the business transaction prong of Georgia's long-arm statute.

*Second*, Heppolette alleges that Haulter committed an intentional infringement of her copyright in addition to claiming the Copyrighted Photograph as her own.[39] In this case, Heppolette's claim for intentional infringement is premised, in part, on Haulter's numerous communications designed to deceive Heppolette, to discourage her from further investigating the Florida Action or the copyright registration, and to discourage her from pursuing the infringement claim in her own right. Specifically, Haulter encouraged Heppolette to take down any traces of the original Copyrighted Photograph and sought any original documentation Heppolette might still

---

[38] Compl. ¶¶ 96-105 (Doc. 1).
[39] *Id.* ¶¶ 106-116 (Doc. 1).

possess in Georgia in a concerted effort to thwart Heppolette from pursuing the copyright infringement case in her own name. *See SkyHop Tech.*, 58 F.4th 1211, 1223-24 (11th Cir. 2023) (finding nonresident defendant's emails to plaintiff connected to extortion and impeding plaintiff from accessing its digital property sufficiently conferred personal jurisdiction over nonresident defendant in Florida based on tortious act). Moreover, conduct such as "a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Diamond Crystal*, 593 F.3d at 1264 (citing *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 279 Ga. 672, 676 (2005)). Haulter's communications in connection with her efforts to intentionally infringe Heppolette's copyright satisfy the threshold for personal jurisdiction under Georgia's long-arm requirements.

Accordingly, Heppolette has shown, at least, that Haulter's acts fall within the purview of Georgia's long-arm statute because (1) Haulter transacted some business in Georgia and (2) Haulter committed an intentional tort in Georgia.

Finally, Heppolette acknowledges the Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the

exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal Brands, Inc.*, 593 F. 3d. at 1259. Having satisfied at least one prong of Georgia's long-arm statute, Heppolette further shows why personal jurisdiction over Haulter does not offend the Due Process Clause.

**(B)   The Court's Exercise Of Specific Personal Jurisdiction Over Haulter Comports With The Due Process Clause.**

"The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985). "The heart of this protection is fair warning—the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'" *Diamond Crystal,* 593 F.3d at 1267 (quoting *Burger King,* 471 U.S. at 474). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

In adherence to this constitutional safeguard, the Eleventh Circuit has fashioned a three-step analysis: (1) Consider "whether a plaintiff's claims arise

out of or relate to a least one of the defendant's contacts with the forum state";
(2) evaluate "whether the defendant 'purposefully availed' herself of the
privilege of conducting activities within the forum state"; and (3) assess
"whether the exercise of personal jurisdiction comports with the 'traditional
notions of fair play and substantial justice.'" *SkyHop Techs., Inc. v. Narra*, 58
F.4th 1211, 1223 (11th Cir. 2023). Heppolette bears the burden of establishing
the first two inquiries, and, upon satisfaction, Haulter must then "make a
compelling case that the exercise of jurisdiction would violate traditional
notions of fair play and substantial justice." *Id*. (citation omitted).

> (i)   *Heppelotte's claims against Haulter directly arise out of and
> relate to Haulter's contacts with Georgia.*

The principal way to establish this first prong is by demonstrating an
"activity or an occurrence that takes place in the forum State and is therefore
subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Judicial
District Court*, 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021) (citation omitted).

Heppolette has satisfied this first prong by showing that Haulter
knowingly and intentionally directed her communications concerning the
Copyrighted Photograph to Heppolette in Georgia with the intention to deceive
Heppolette and to discourage her from pursuing the Florida Action. Indeed,
the essence of Heppolette's copyright infringement claim arises out of Haulter's
false representation of herself to DFJ Vinhos as the copyright owner in order

to financially benefit. Specifically, Haulter directed communications urging Heppolette to "tak[e] down the image [Heppolette] [had] on Flickr, so that [DFJ Vinhos] can't say that is where they got it from either. That way, they can't say that there were multiple photos available, and the process needs to start again and/or discredit the claim."[40] In reality, Haulter did not want any other original sources of the Copyrighted Photograph to appear online so that she could independently claim the Copyrighted Photograph as her own and profit therefrom. Moreover, Haulter discouraged Heppolette from intervening in the Florida Action by falsely communicating the Florida Action would end, be moved to Portugal, and was not looking promising.[41] Finally, Haulter directly obtained the image she used in the Florida Action from Heppolette's personal webpage as evidenced by the watermark. These acts form the basis for Heppolette's claims against Haulter insofar as Heppolette seeks a declaratory judgment that she owns the Copyrighted Photograph and that Haulter's acts amount to intentional infringement.

> **(ii)** *Haulter purposefully directed her activities at Georgia by communicating material misrepresentations to Heppolette concerning the Alleged Agreement, the Copyrighted Photograph, and the Florida Action.*

The requirement that Haulter has "purposefully directed" her activities at the forum state ensures that she will not be haled into a jurisdiction solely

---

[40] Heppolette Decl. ¶ 7.
[41] *Id.* at ¶ 9.

as a result of "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or third person." *Sarvint Techs., Inc. v. Omsignal, Inc.*, 161 F. Supp. 3d 1250, 1260–61  (N.D. Ga. 2015) (quoting *Burger King*, 471 U.S. at 475). However, this requirement does not mandate continuous contacts or acts. Rather, the Supreme Court has unequivocally held  that "so long as a defendant creates a substantial connection with the forum, even a *single act* can support jurisdiction." *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed.Cir.1998) (citing *Burger King*, 471 U.S. at 475,); *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (emphasis added). Therefore, "[w]hen a defendant purposefully avails [herself] of contacts with the forum state and a sufficient nexus exists between those contacts and the plaintiff's claim—i.e., when it is specific jurisdiction that is alleged to exist—then the defendant can be said to have fair warning of potential litigation in the forum state." *Sarvint Techs., Inc.*, 161 F. Supp. 3d at 1261. Importantly, however, in cases such as this one involving an intentional tort, "two applicable tests can determine whether purposeful availment occurred: the effects test and the traditional minimum contacts test." *SkyHop Techs., Inc.*, 58 F. 4th at 1230 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d. 1339, 1356 (11th Cir. 2013).

Here, Heppolette has shown the essential foundation for the "purposeful availment" minimum contacts inquiry. Haulter knowingly and intentionally directed electronic communications to Heppolette in connection with the Alleged Agreement, the Copyrighted Photograph, and the Florida Action. With respect to the Alleged Agreement, Haulter maintains that the parties "agreed to split any money received by Haulter" based on a "partially written and oral agreement providing for a 50-50 split."[42] Moreover, Haulter requested material information from Heppolette while in Georgia.[43] Since Haulter's communications form the basis of the Alleged Agreement, this contact "show[s] that [Haulter] deliberately 'reached out beyond' her home," such as by "entering a contractual relationship centered" in Georgia thus satisfying the minimum contact's test. *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 285 (2014)).

Aside from the minimum contacts established by Haulter's communications and allegations of the Alleged Agreement, Haulter's intentional infringement of Heppolette's copyright involved specific communications directed towards Heppolette in aid of Haulter's tortious conduct. Under this analysis, "a nonresident defendant's single tortious act in the forum state can satisfy the effects test, even if the defendant lacks any

---

[42] Heppolette Decl. ¶ 11, Ex. A. at p. 2, 4.
[43] *Id*. ¶ 6.

other contacts with the forum state." *SkyHop Techs., Inc.*, 58 F. 4th at 1230. Indeed, the Eleventh Circuit has concluded that a defendant who used a Florida plaintiff's trademarked name and picture on a website accessible in Florida satisfied the effects test. *Licciardello v. Lovelady*, 544 F.3d 1280, 1285-86 (11th Cir. 2008).

In connection with her intentional infringement, Haulter engaged in deceptive communications directed into Georgia. Specifically, Haulter misrepresented her intentions to pursue the Florida Action on Heppolette's behalf, intentionally sought to shield public evidence that Heppolette actually owned the Copyrighted Photograph by directing Heppolette to set her Flickr.com account to private mode or otherwise take down the Copyrighted Photograph, and misrepresented the status of the Florida Action.[44] Haulter knew her communications were directed into Georgia and would cause Heppolette to suffer an injury in Georgia as a consequence of Haulter's intentional infringement. Moreover, Haulter obtained copies of the Copyrighted Photograph used in the Florida Action directly from Heppolette's livejournal webpage hosted at www.lauralatham.com.[45] *See Lovelady*, 544 F.3d at 1285-86.

---

[44] *Id*. ¶¶ 7-10.
[45] *Id*. ¶ 7.

Finally, Haulter's argument that Heppolette cannot overcome the "but for" test is misplaced.[46] To be sure, Heppolette did suffer harm from DFJ Vinhos' infringement of the Copyrighted Photograph earlier than Haulter's alleged acts. However, Haulter's acts form an independent basis for harm against Heppolette separate and apart from any harm caused by DFJ Vinhos' infringement. Indeed, but for Haulter's material misrepresentations concerning the Copyrighted Photograph and the Florida Action, Heppolette could have pursued litigation against DFJ Vinhos unshackled by allegations that Haulter owned the Copyrighted Photograph. Moreover, Haulter's commercialization of the Copyrighted Photograph by entering into an unauthorized settlement agreement with DFJ Vinhos constitutes an independent act directly harming Heppolette's interests in Georgia concerning the Copyrighted Photograph.

> (iii)   *The exercise of personal jurisdiction over Haulter in this District does not offend traditional notions of fair play and substantial justice.*

Finally, exercising personal jurisdiction over Haulter in this action will not offend traditional notions of fair play and substantial justice. Under this final prong, the Court considers "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate justice system's

---

[46] Haulter Mot. to Dismiss at p. 10-11 (Doc. 11).

interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1276 (11th Cir. 2002) (citing *Burger King,* 471 U.S. at 476).

Here, the burden for Haulter to litigate this action in Georgia is minimal considering she resides in a neighboring state within the same federal circuit. Finally, Georgia's and the interstate justice system's interests in adjudicating this dispute in Georgia are substantial because the harm occurred in Georgia, the Copyrighted Photograph is hosted in Georgia, and Haulter can arguably be considered a necessary party for complete relief. Indeed, Heppolette's main claim is asserted against DFJ Vinhos who unquestionably falls within Georgia's general and specific personal jurisdiction.[47] Given the allegations, it is reasonable to conclude that DFJ Vinhos will crossclaim against Haulter for material misrepresentations arising out of the Florida Action settlement agreement. Accordingly, Georgia represents the most efficient forum to litigate the parties' claims and crossclaims against one another.

## CONCLUSION

For all the within and foregoing reasons, this Court may exercise specific personal jurisdiction over Haulter because (1) she transacted business in

---

[47] Compl. ¶¶ 71, 73, 75-80, 85-95 (Doc. 1).

Georgia within the meaning of Georgia's long-arm statute; (2) she committed an intentional tort by infringing on Heppolette's copyright through the aid of direct communications deceiving and discouraging Heppolette in the State of Georgia from protecting her Copyrighted Photograph; and (3) the exercise of personal jurisdiction over Haulter in Georgia satisfies any due process concerns, which Haulter fails to address in any case.

Respectfully submitted this the 25th day of January, 2024.

*/s/W. Lawton Jordan*
Bryan M. Knight
Georgia Bar No. 142401
Jonathan M. Palmer
Georgia Bar No.
Nicholas Sears
Georgia Bar No.
W. Lawton Jordan
Georgia Bar No. 119651

*Attorneys for Plaintiff*

KNIGHT PALMER, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightpalmerlaw.com
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com
ljordan@knightpalmerlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Rules 5.1 and 7.1 (D), the undersigned counsel certifies that the foregoing response brief has been prepared in Century Schoolbook 13-point font as permitted and approved by the Court in Local Rule 5.1 (C).

*/s/ W. Lawton Jordan*
W. Lawton Jordan
Georgia Bar No. 119651

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing *PLAINTIFF'S RESPONSE TO DEFENDANT JESSICA HAULTER'S MOTION TO DISMISS* with the Clerk of Court by using the CM/ECF system, and that I have served a copy of such filing via electronic mail to:

**WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC**
Nicholas P. Panayotopoulos
npanayo@wwhgd.com
J. Hilliard Burton
hburton@wwhgd.com
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326

**COFFY LAW, LLC**
Emmanuel Coffy
Emmanuel.coffy@coffylaw.com
515 Valley Street, Suite 1
Maplewood, New Jersey 07040

So certified this 25th day of January, 2024.

*/s/W. Lawton Jordan*
W. Lawton Jordan
Georgia Bar No. 119651