# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LAURA M. HEPPOLETTE,<br><br>    Plaintiff,<br><br>v.<br><br>DFJ VINHOS, S.A. a Portuguese Corporation, and JESSICA HAULTER,<br><br>    Defendants. | CASE NO.: 1:23-cv-05844-JPB |

## **DECLARATION OF LAURA HEPPOLETTE**

I, Laura Heppolette, declare as follows:

1.

My name is Laura Heppolette. I am over the age of 18 and am competent to give this declaration.

2.

My husband, John Heppolette, first brought the issue of Defendant DFJ Vinhos, S.A.'s ("Vinhos") use of a photograph of a bulldog on its wine bottles and boxes to my attention in April 2023. In turn, we contacted Defendant Jessica Haulter and made her aware of Vinhos' use of the image.

3.

At all relevant times, both I and my husband were located in Cherokee County, Georgia when the communications below occurred. Mrs. Haulter, as a friend, had reason to know of our residence in Georgia because she follows me on social media where my I have discussed and/or referenced my Georgia residence.

4.

After learning of Vinhos's use of the bulldog image, Mrs. Haulter allegedly reached out to a marketing director where she worked. She sent me an Instagram message stating, "We'll get something out of this – even if its just wine. Haha." I then asked if I could assist in a forthcoming lawsuit and Mrs. Haulter responded, "Totally girl, we gonna get paid!"

5.

Mrs. Haulter sent me another message on or about April 19, 2023 to inform me that she had reached out to an intellectual property lawyer in Florida to review potential copyright infringement claims against Vinhos. Initially, Mrs. Haulter stated to Mrs. Heppolette's husband that, "if anything does come out of this, obviously [Mrs. Heppolette] is included."

6.

Mrs. Haulter also sent me and my husband a message on April 19, 2023 asking whether I had "the original hard drive or file of the photo" or "the original photo." On April 20, 2023, my husband responded that the original copyrighted photograph

was on my Flikr.com account from 2006 and shared a link with Mrs. Haulter. He further noted that it was complete with the EXIF data and had "all rights reserved" clearly stated in the licensing section.

7.

I had previously posted the bulldog photograph on my LiveJournal account and my personal website www.lauralatham.com. Mrs. Haulter stated that the intellectual property lawyer she was speaking with suggested "taking down the image [Mrs. Heppolette had] on Flickr, so that [Vinhos] can't say that is where they got it from either. That way, they can't say that there were multiple photos available and the process needs to start against and/or discredit the claim."

8.

Mrs. Haulter sent a subsequent message to me indicating that Vinhos had responded to the lawyer's inquiry and that "[t]heir responses have been soooooo ridiculous." She then provided some additional information regarding Vinhos' response.

9.

I later learned that Mrs. Haulter had filed a lawsuit in the Middle District of Florida excluding me as a party and falsely stating that she was the author and creator of the photograph of the dog. At that point, I was upset and surprised and began evaluating what legal options I may have. However, Mrs. Haulter later sent me

another message stating that Vinhos intended to file paperwork to have the lawsuit moved to Portugal. Because it seemed that Mrs. Haulter's lawsuit may soon end, I began evaluating whether I could take steps to pursue a lawsuit in my own name.

10.

However, on or about October 17, 2023, I later learned that Mrs. Haulter entered into a settlement agreement with Vinhos.

11.

On or about October 20, 2023, my attorneys contacted Mrs. Haulter's counsel regarding the copyright dispute. On October 27, 2023, Mrs. Haulter's counsel responded via letter to my allegations and demands that she disavow ownership of the copyrighted photograph and any proceeds she may have received. A true and correct copy of Mrs. Haulter's response is attached hereto as **Exhibit A**. In that letter, Mrs. Haulter claims that I "agreed to split any money received by [Mrs.] Haulter" based on a "partially written and oral agreement providing for a 50-50 split." She also continued to assert that she is the copyright owner.

12.

Mrs. Haulter sent me at least thirteen Instagram messages relating to the dog photograph and potential copyright issues with full knowledge that I was located in Georgia. She sent me at least seventeen Facebook messages relating to the dog photograph and potential copyright issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 25, 2024 in Atlanta, Georgia.

_____
LAURA HEPPOLETTE

# EXHIBIT "A"



157 E. New England Ave.                                             Terry M. Sanks
Suite 375                                                     Direct:  407-644-8888
Winter Park, FL 32789                                         tsanks@firstiniplaw.com

October 27, 2023

**VIA EMAIL** – nsears@knightpalmerlaw.com

Mr. Nicholas Sears, Esquire
Knight Palmer
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309

Re:    Response to Heppolette Demands

Dear Nick,

As you know, the demands in your letter, dated October 25, 2023, have been made several times before.  Notwithstanding, out of professional courtesy, I will respond yet again.

Before I do, below is a brief outline of the situation, information and facts that has previously been provided to you or that you already knew:

- Your client's husband (Mr. Heppolette) provided a copy of a Costco article that had a picture of the DFJ wine bottle in it to my client, Ms. Jessica Haulter ("Haulter").

- Your client, Laura Heppolette (or "Heppolette" and collectively with her husband "the Heppolettes") and Mr. Heppolette agreed that Ms. Haulter would handle the situation with DFJ Vinhos, S.A. ("DFJ"), because your client, by her acknowledgement and actions, acknowledged that Ms. Haulter was the copyright owner.  This fact is further solidified since your client is a paralegal who possesses the requisite knowledge to have spoken up and taken the lead in bringing an action against DFJ if she was the copyright owner.  If you now want to claim that she did not possess the requisite knowledge to have brought the lawsuit, then it is evident that she induced my client into bringing my client's action with the sole intent of swoping in once there was a settlement to claim it for herself.

Nicholas Sears, Esq.
October 27, 2023
Page 2

- Your client agreed to split any money received by Haulter. There is a partially written and oral agreement providing for a 50-50 split. Evidence of this has been provided to you. Prior to providing the evidence, you denied any such agreement existed. After providing you with the evidence and requesting the same evidence being provided by your client, nothing has been produced and your firm has taken the position that an agreement did not exist.

- It appears that your client has since removed the relevant evidence from the parties (the Heppolettes and Haulter) group chat messages either at the time she made her claim or after I brought the agreement to your attention.

- Haulter kept your client and her husband abreast of the status of the case against DFJ before DFJ and Haulter agreed upon confidentiality. At no point did your client raise a claim of copyright ownership.

- As acknowledged by your client, using the resources of Knight Palmer, your client continued to monitor the Haulter/DFJ et al. court proceedings waiting until there was information regarding a Haulter/DFJ settlement.

- Upon seeing the Notice of Settlement, your client and then you, her counsel, contacted the undersigned to claim copyright ownership and demanded the proceeds from the Haulter/DFJ settlement.

- Based on my understanding of the agreement between our clients and prior to being provided any proof of your client's alleged ownership rights, I strongly encourage you to allow the settlement conditions to complete and that the parties abide by their original agreement—this recommendation was refused.

- Multiple demands have been made by you to see the Settlement Agreement between Haulter and DFJ ("Haulter/DFJ Settlement Agreement") which have been denied since the consent of DFJ is required.

- Upon you later providing images from your client's Flickr account, me investigating the situation further and at your further threatening instance, I brought this matter to the attention of DFJ.

- Not only is DFJ aware of the situation between our clients but your firm has been in direct communication with DFJ's attorney attempting to craft a deal for your client. Though no deal was reached, the results have included your firm

Nicholas Sears, Esq.
October 27, 2023
Page 3

> representing to me that DFJ's attorney provided you with an estimate of the settlement between Haulter and DFJ, which DFJ's attorney denies. I also understand that these actions are being taken by your client because of the belief, relayed by your firm to DFJ's attorney, that your client is owed between $600,000 to $1,000,000.

- Your over-the-top efforts with DFJ on behalf of your client have further put the Haulter/DFJ Settlement Agreement in jeopardy.

- I also informed you that your client, if the copyright owner (though my client disputes this claim), does not have a right to profit from an image of Haulter's dog pursuant to New Jersey law (where the image was taken). When I previously put you on notice of this issue, I also told you I am not a New Jersey attorney and could not confirm this potential cause of action, and that you should research the situation yourself.

- Despite your repeated efforts, DFJ has continued to refuse to provide consent for you or your client to see the Haulter/DFJ Settlement Agreement, even under an attorneys' eyes-only agreement.

- Your firm has represented to me that DFJ's counsel has provided you with a rough estimate of the settlement amount—a position that DFJ's attorney denies. Hence, this representation now calls in question the truthfulness of representations on behalf of your client.

- You failed to communicate to me that DFJ's counsel did offer your client $50,000 for your client and Haulter to then split as they saw fit. I understand that your client rejected this offer.

- You also have represented that your client has the camera and original copy of the picture, yet neither have been produced.

- Presumably consent to see the Haulter/DFJ Settlement Agreement may have been provided by DFJ if your client had agreed to be held to the same terms of the Haulter/DFJ settlement agreement, but your client rejected this offer.

- Because of your client's conscious and deliberate actions to interfere with the Haulter/DFJ settlement, at this stage, the Haulter/DFJ Settlement Agreement appears to be done.

Nicholas Sears, Esq.
October 27, 2023
Page 4

- Based on the actions taken by your client, neither of our clients are likely to benefit financially.  Furthermore, if there is a chance that there is a financial benefit to be realized unilaterally by your client, the improper use of the image of my client's dog by your client could still leave your client without a financial gain.

To be clear, Ms. Haulter has not financially benefited from the image in question.  Your client's actions have prevented this from happening. Think about it—if Ms. Haulter had financially benefitted, why would DFJ make an offer to your client for both our clients to split?

As to your repeated demands, the answer is no different than previously communicated to you.   My client will not comply with these repeated demands in view of the executed Haulter/DFJ settlement agreement. Ms. Haulter maintains she is the copyright owner.

On another note, I understand from my client that she has retained a NJ attorney who has sent Mrs. Heppolette, by way of your firm, a cease and desist letter regarding Mrs. Heppolette attempt to profit from the image of Ms. Haulter's dog.

In closing, though I understand advocating for your client, I also would assume that an attorney would respect a confidential settlement agreement.

Just as I shared your demand letter with my client, kindly do the same with this letter.

Sincerely,

/Terry M. Sanks/

Terry M. Sanks

TMS/