UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAURA M. HEPPOLETTE, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DFJ VINHOS, S.A. a Portuguese ) <br> Corporation, and JESSICA HAULTER, ) <br> ) <br>    Defendants. ) | Case No.: <br> 1:23-cv-05844-JPB |

**REPLY BRIEF IN SUPPORT OF DEFENDANT JESSICA HAULTER'S MOTION TO DISMISS**

COMES NOW, Defendant Jessica Haulter ("Haulter" or "Defendant"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(2), hereby files this Reply Brief in Support of her Motion to Dismiss respectfully showing this Court as follows:

### I.  SUMMARY OF ARGUMENT

In her Response in Opposition to this Motion, Plaintiff argues personal jurisdiction in this Court is proper for two reasons: 1) Haulter conducted business in the forum state by nature of entering into a contract with Plaintiff providing for the a "50-50" split of the proceeds of any settlement with Defendant DFJ Vinhos, S.A.

-1-

("Defendant DFJ") and 2) Haulter's electronic communications to Plaintiff—more than 17 years after Plaintiff allegedly took a photograph of Haulter's bulldog and 8 years after Defendant DFJ allegedly misappropriated the photograph for its own use—constitute intentional torts designed to discourage or deceive Plaintiff from exercising any of her alleged rights to the photograph. Both positions are patently contradictory, respectively mutually exclusive, and unsubstantiated.

First, Plaintiff attempts to have her cake and eat it to. While claiming on one hand that the alleged contractual agreement between Plaintiff and Haulter required partial performance in the forum state—thus subjecting Haulter to personal jurisdiction under O.C.G.A. § 9-10-91(1) of Georgia's Long-Arm Statute—Plaintiff simultaneously denies the very existence of any such contract on no less than five occasions, on the other hand. *See* Plaintiff's Response, pp. 2 (ft. nt. 2), 6 (ft. nt. 25), 11-13. The exercise of jurisdiction in this forum is determined by the allegations of Plaintiff's Complaint and subsequent affidavit, not any such allegations by Haulter, in a separate action, in a separate court, in another state. Because Plaintiff denies the existence of any agreement between Plaintiff and Haulter, Plaintiff cannot use the agreement as a basis for jurisdiction. Therefore, this Court plainly lacks the ability to exercise any jurisdiction over Haulter based on the "Alleged Agreement." *See generally*, Plaintiff's Response.

Second, Plaintiff fails to set forth an adequate basis for the exercise of personal jurisdiction in the forum based on the electronic communications between Haulter, while a resident of Florida, and Plaintiff and her husband, as residents of Georgia. Plaintiff argues that these communications were designed to intentionally defraud, deceive or otherwise prevent Plaintiff from asserting any alleged rights to the photograph in the Florida Action brought by Haulter against Defendant DFJ. By some form of backwards logic, Plaintiff attempts to argue jurisdiction is proper by outlining the continuous communication between the parties—claiming these actions are so systemic that specific jurisdiction is warranted—while simultaneously claiming ignorance to and/or injury from Haulter's efforts in the Florida Action to recover damages stemming from Defendant DFJ's alleged misappropriation of the photograph. Again, Plaintiff attempts to have her cake and eat it too. Plaintiff cannot claim that Haulter interfered with her ability to exercise any alleged rights by failing to communicate, while also claiming that the communication was so consistent and continuous as to provide jurisdiction in this forum.

Consequently, Plaintiff has failed to adequately plead the basis for this Court to exercise jurisdiction over this matter and this Motion should be granted.

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A. The exercise of personal jurisdiction based on the "Alleged Agreement" is barred by Plaintiff's disavowal of the existence of said contract.

In her Response, Plaintiff tacitly agrees that this Court cannot exercise general personal jurisdiction over this matter. Instead, she asserts that specific personal jurisdiction is warranted on the two bases noted above. Specifically, Plaintiff outlines that specific personal jurisdiction is warranted if it complies with Georgia's Long-Arm Statute. O.C.G.A. § 9-10-91. Section (1) of the statute outlines that "A court of this state may exercise personal jurisdiction over any nonresident…[that] transacts business in within this state." O.C.G.A. § 9-10-91(1). Although Plaintiff agrees that this section applies only to contract actions, she simultaneously admits she has not brought a breach of contract action. Plaintiff's Response, pp. 11, 13. Therefore, by Plaintiff's own admissions, the exercise of specific jurisdiction is precluded under this section.

However, Plaintiff appears to contradict herself further. Not only has Plaintiff failed to allege the existence of a contract between the parties, Plaintiff patently disavows the existence of any such contract between Plaintiff and Haulter. *See* Plaintiff's Response, pp. 2 (ft. nt. 2), 6 (ft. nt. 25), 11-13. Plaintiff simultaneously claims that the communications between herself and Haulter constitute "transacting

business" in Georgia, while also claiming that no such business occurred because no contract ever existed.

Plaintiff cites *Aflac, Inc. v. SDT Air, LLC* as the basis for her claims that jurisdiction is still proper even if the contract was not eventually consummated. 978 F. Supp. 2d 1304 (M.D. Ga. 2013); Plaintiff's Response, pp. 12-13. However, *Aflac* is entirely inapposite to the allegations of Plaintiff's Complaint and the issues before this Court. Not only does Plaintiff deny the very existence of the contract—consummated or not—Plaintiff also ignores the additional facts present in *Aflac* that warranted jurisdiction, wherein the contract was unconsummated but all parties agreed to the content and provisions included therein. Here, Plaintiff claims that because partial performance of the "Alleged Agreement" would have required payment of monies into Georgia, a fact known to Haulter, the contract is sufficient for Haulter to meet the requirements that she "transacted business" in Georgia under the Long-Arm Statute. However, in *Aflac*, the intent of the defendant was not only to potentially pay monies to the plaintiff if the sale of an aircraft was completed, but additionally:

> "[The defendant] chose to execute the letter of intent knowing this, chose to submit escrow payments intended to be transferred to Aflac upon successful completion of the purchase, chose to make arrangements to send a mechanic to Georgia on behalf of [defendant] to inspect the Aircraft and its records, and chose to demand that Aflac

continue negotiations or face a damages suit by sending letters directly addressed to an employee at Aflac's legal department in Georgia."

F. Supp. 2d at 1312. Plaintiff has made no such similar allegations here, and plainly cannot. Rather, she relies solely on the electronic communications, sparingly few of which could be interpreted to apply to the formation of any alleged contract, as her basis. Plaintiff fails to meet her burden.

Plaintiff cannot claim that the formation of a contract between Plaintiff and Haulter gives rise to specific jurisdiction, while also claiming that the contract did not exist. Further, Plaintiff has failed to allege sufficient actions by Haulter in the alleged negotiation of the "Alleged Agreement" to warrant the exercise of jurisdiction.

### B. Georgia's Long-Arm Statute does not allow for the exercise of specific personal jurisdiction based on the electronic communications between Haulter, in Florida, and Plaintiff, in Georgia.

Plaintiff's second offered justification in support of its exercise of specific jurisdiction relates the electronic communications between Plaintiff, her husband, and Haulter, which purportedly meet Section (3) of Georgia's Long-Arm Statute, which states the :

> A court of this state may exercise personal jurisdiction over any nonresident…[that] [c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct,

-6-

> or derives substantial revenue from goods used or consumed or services rendered in this state....

O.C.G.A. § 9-10-91(3). Importantly, all communications between the Parties occurred while Haulter resided in Florida; in other words, while Haulter was a non-resident. In order to qualify for jurisdiction under this Section, Haulter must "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered in this state." *Id*. It is undisputed that Haulter does not regularly do or solicit business, or derive substantial revenue from goods used or consumed or services rendered in this state. Therefore, Plaintiff's only hope is that the electronic communications constitute a persistent course of conduct which *caused a tortious injury*. Plaintiff has failed to allege sufficient facts to do so.

Rather, it is clear that these communications were not intended to defraud, deceive, or discourage Plaintiff, usurp Plaintiff's rights, or otherwise obfuscate the purpose of the Florida Action, but rather to keep Plaintiff informed regarding the status of the action and in cooperation with Plaintiff. *See generally*, Communications between Parties, attached hereto as Exhibit A. Because this is abundantly clear with the review of the full communications available, Plaintiff instead cherry picks only those messages between Plaintiff and/or her husband and Haulter that appear to

minimize Plaintiff's knowledge of the facts and circumstances leading up to and during the Florida Action while also obscuring or ignoring Plaintiff's own failures to assert any alleged rights. In other words, Plaintiff attempts to fabricate tortious acts out of thin air because Plaintiff failed to assert any alleged rights during the course of the Florida Action, and only chose to involve herself in litigation after a recovery was considered viable as a result of the settlement between Defendant DFJ and Haulter in the Florida Action.

There is no doubt that Plaintiff was fully aware of actions taken by Haulter in the Florida Action and had full opportunity to raise objections, reservations, or otherwise assert any purported rights to the photograph, and yet declined to do so. However, in lieu of doing so, Plaintiff instead chose to allow Haulter to expend her own resources, time, and money, to investigate the Parties' options, contact attorneys, obtain necessary information and documentation, and otherwise further the Florida Action towards a resolution.

For example, it was Plaintiff and/or her husband that first alerted Haulter to the alleged misappropriation of the photograph with the suggestion that she pursue legal action. *See* Plaintiff's Complaint, ¶45; Exhibit A. Haulter immediately notified Plaintiff and her husband that she would reach out to a "lawyer friend," and therefore Plaintiff has been aware of potential litigation from the outset. Plaintiff's Complaint,

¶46; Exhibit A. Plaintiff was further involved in communications with Haulter regarding each step of the process in the Florida Action, including the retention of counsel, jury trial demands, potential recovery, service of process, copyrighting, and other necessary steps to bolster Haulter's position. *See generally*, Exhibit A.

The argument that "At all times relevant, Haulter led [Plaintiff] to believe that she was pursuing the lawsuit on [Plaintiff's] behalf against [Defendant DFJ] rather than in Haulter's name," is patently false. Plaintiff's Response, p. 4. At no time did Plaintiff ever request to speak with counsel, be named as a plaintiff in the Florida Action, or otherwise raise any reservations with Haulter's course of action. Rather, Plaintiff never even asserted any exclusive ownership of the photograph, calling it "our photo," and stating it was "great news" that Haulter was able to secure a copyright of the photograph without Plaintiff's involvement.

Further still, Plaintiff now alleges exclusive ownership of the photograph and states that a *copy* was taken from her personal Flikr.com account. Plaintiff has not alleged she is in current possession of the alleged original photograph in a native form, only that a copy was posted to her personal website and Flikr.com account. However, a copy of the photograph was similarly posted to Haulter's Flikr.com account, Facebook, and MySpace pages; Hualter similarly took her copies down. Any allegation that Haulter requested Plaintiff to remove the copy of the photograph

-9-

from this internet as a "concerted effort to thwart [Plaintiff] from pursuing the copyright infringement case in her own name," is wholly untrue, as made clear in the full communications. Rather, Haulter suggested that Plaintiff take "down the image you have on Flickr, so that [Defendant DFJ] can't say that is where [Defendant DFJ] got it from either." In other words, Plaintiff was well aware that litigation was ongoing, that the lawyer Haulter retained (with whom Plaintiff never requested to even speak with, much less retain) made the suggestion, and the suggestion was designed to advance the Florida Action.

No tortious injury in Georgia was caused by Haulter and Haulter did not "engage in any other persistent course of conduct" in Georgia. Plaintiff cites *SkyHop Techs., Inc. v. Narra* in support of the argument that Haulter committed a tortious act in Georgia while a non-resident. 58 F.4th 1211 (11th Cir. 2023); Plaintiff's Response, p. 14.  However, the court in *SkyHop Techs., Inc.* concluded the non-resident defendant's emails constituted active threats and extortion on their own, which caused the injury. Here, Plaintiff is entirely unable to show any tortious act by Haulter. Rather, it is clear Haulter kept Plaintiff apprised of all aspects of the litigation before and during the Florida Action and Plaintiff failed to raise any concern. Therefore, Plaintiff has failed to allege facts sufficient for the exercise of

-10-

specific personal jurisdiction under Georgia's Long-Arm statute and her Complaint must be dismissed.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be GRANTED and Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted this 8th day of February, 2024.

**WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC**

/s/ Hilliard Burton
Nicholas P. Panayotopoulos
Georgia Bar No. 560679
npanayo@wwhgd.com
J. Hilliard Burton
Georgia Bar No. 703213
hburton@wwhgd.com
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
(404) 876-2700 / (404) 875-9433 (fax)

**COFFY LAW, LLC**

Emmanuel Coffy *(admitted pro hac vice)*
New Jersey Bar No. 047132004
Emmanuel.coffy@coffylaw.com
515 Valley Street
Suite 1
Maplewood, NJ  07040

(973) 375-1804 / (973) 996-2952 (fax)

*Attorneys for Defendant Jessica Haulter*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that the foregoing brief has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in Local Rule 5.1(C).

<u>/s/ Hilliard Burton</u>
J. Hilliard Burton
Georgia Bar No. 703213

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT JESSICA HAULTER'S MOTION TO DISMISS** with the Clerk of Court by using the CM/ECF system, and that I served a copy of such filing via US mail and electronic mail to:

Bryan M. Knight
Jonathan M. Palmer
Nicholas Sears
W. Lawton Jordan
KNIGHT PALMER, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
*Attorneys for Plaintiff*

This 8th day of February, 2024.

/s/ Hilliard Burton
J. Hilliard Burton
Georgia Bar No. 703213