# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| LAURA M. HEPPOLETTE, | |
| Plaintiff, | |
| v. | CASE NO.: 1:23-cv-05844-JPB |
| DFJ VINHOS, S.A. a Portuguese Corporation, and JESSICA HAULTER, | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff LAURA M. HEPPOLETTE ("Heppolette"), an individual citizen of the State of Georgia, and, by and through her undersigned counsel, hereby submits this Complaint against Defendants DFJ VINHOS, S.A., a Portuguese corporation ("DFJ Vinhos") and JESSICA HAULTER ("Haulter"), an individual citizen of the State of Florida, showing this Honorable Court as follows:

## <u>NATURE OF THE CASE</u>

1.

The gravamen of this action involves the Defendants' intentional infringement of Plaintiff's original photography work for financial gain and commercial purposes. At the core, this action is primarily focused on DFJ

Vinhos' infringement of a bulldog photograph originally captured by Plaintiff in 2006 that is subject to Plaintiff's copyright protection under Registration Number VA 2-367-866 (the "Copyrighted Photograph"). In April 2023, Plaintiff first became aware the Copyrighted Photograph appeared commercially as a label on wine cases produced by DFJ Vinhos – a large winery based in Portugal that distributes its wine products globally, including in Georgia. Plaintiff recently discovered that DFJ Vinhos originally began using a derivative of the Copyrighted Photograph on its wine labels as early as 2015.

Plaintiff is also bringing claims against Haulter for declaratory judgment and copyright infringement premised upon Haulter's misappropriation and infringement of the Copyrighted Photograph for her own personal financial gain. Plaintiff discovered that Haulter claimed the Copyrighted Photograph as her own and that Haulter had entered into a monetary settlement agreement with DFJ Vinhos wherein Haulter purportedly defrauded DFJ Vinhos by misrepresenting the true ownership of the Copyrighted Photograph. Upon information and belief, Haulter received proceeds, or is due to receive proceeds, from the settlement agreement with DFJ Vinhos without informing Plaintiff nor seeking Plaintiff's permission nor consent to enter into a settlement agreement concerning Plaintiff's Copyrighted Photograph.

Accordingly, Plaintiff brings this action seeking monetary and injunctive relief against DFJ Vinhos for infringement of the Copyrighted Photograph and disgorgement of profits received from the commercial use thereof. Additionally, Plaintiff seeks monetary and injunctive relief against Haulter for infringement of the Copyrighted Photograph as a consequence of claiming the Copyrighted Photograph as her own property and then entering into a settlement agreement from which she received financial gain.

## PARTIES

2.

Plaintiff is an individual person residing in Cherokee County, Georgia, and a citizen thereof.

3.

Upon information and belief, DFJ Vinhos, is a foreign corporation registered under the laws of Portugal, with its principal place of business located at 2070-68 Vila Cha de Ourique, Portugal.

4.

Haulter is an individual person residing in Orange County, Florida, and a citizen thereof.

## JURISDICTION

5.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331 and 1338 (a) because it is a civil action involving a federal question of law arising under the Copyright Act, 17 U.S.C. § 501.

6.

This Court also has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is among citizens of different States and foreign states such that complete diversity exists.

7.

This Court has personal jurisdiction over DFJ Vinhos because it has conducted business in the State of Georgia, has directed activities at residents of the State of Georgia, and the infringement occurred in the State of Georgia, specifically within the Northern District.

8.

DFJ Vinhos marketed and sold, with sufficient minimum contact, its red, rose, and white wine blends bearing a label cordially known as the "PAXIS Bulldog" which is a derivative work of the Copyrighted Photograph.

9.

DHJ Vinhos marketed and sold the "PAXIS Bulldog" labeled wine products through domestic distributors in the State of Georgia including,

among others, Costco Wholesale Corporation, a foreign corporation registered to do business in the State of Georgia ("Costco"), Cost Plus World Market, LLC, a foreign limited liability company registered to do business in the State of Georgia ("World Market"), and Retail Services & Systems, Inc. which does business as Total Wine & More at five locations in the State of Georgia, including in the Northern District ("Total Wine").

10.

This Court has personal jurisdiction over Haulter because she reached into the State of the Georgia by infringing upon Plaintiff's Copyrighted Photograph through electronic means and directed electronic communications into the State of Georgia.

**VENUE**

11.

Venue for this action is proper pursuant to 28 U.S.C. §§ 1391 and 1400 (a).

**FACTUAL BACKGROUND**

**A. The origin of the Copyrighted Photograph.**

12.

Plaintiff has engaged in the art of photography throughout her lifetime and has publicized many of her photographic works online with a disclaimer that she owns and reserves all rights to the photographs.

13.

In or about June of 2006, Haulter requested for Plaintiff to take care of an English Bulldog named Brooklyn ("Brooklyn the Bulldog") while Haulter was out-of-town.

14.

During this period in 2006, Haulter resided in New York and Mrs. Heppolette resided in New Jersey.

15.

While Plaintiff was in temporary possession of Brooklyn the Bulldog, Plaintiff captured several artistic photographs of Brooklyn the Bulldog within the confines of Plaintiff's personal residence at the time. True and correct images of the photographs Plaintiff personally captured that weekend of Brooklyn the Bulldog are included in an album series attached hereto as **Exhibit A**.

16.

Haulter was not present at the time the images depicted in Exhibit A were captured on camera. Haulter did not suggest that Plaintiff take the images and she did not direct any elements of the images (e.g., lighting, filters, poses, etc.).

17.

One of the images depicted in Exhibit A would later become the subject of this litigation. Specifically, the photograph attached hereto as **Exhibit B** depicting Brooklyn the Bulldog in a resting, front-facing position. Exhibit B is an original, unedited version of the photograph of Brooklyn the Bulldog that Plaintiff personally captured on or about June 22, 2006.

18.

On or about July 28, 2006, Plaintiff uploaded a cropped version of Exhibit B to her Flikr.com account. A true and correct image of Plaintiff's Flikr.com account depicting the cropped version of Exhibit B with the upload date visible is attached hereto as **Exhibit C**. Exhibit C is the primary image subject to the Copyrighted Photograph. Plaintiff's Flickr.com personal page with a direct link to the Copyrighted Photograph may be found at:

https://www.flickr.com/photos/lauralatham/200114822/in/photolist-6e7FqZ-ZaeUzQ-2gToiC7-n94zj-iFDeD-iFDdJ-iFDay-iFDbM-n94zo-oFZUD-6e7Fqa-iFDcQ-iFDbb-6ebQMo-6ebQMb-4QgSgC-8gUwPW-oFZXn-8V5zJh-4U42Hc-5aEjDd-4uwJG-7xTvV5-5Fa81R-4N181i-n94zg-2nsZCXg-2e1oq5-FhGRY3-dGGHmn-GSTbVh-cqDbi-sWCyfL-GSTcQU-GSTckf-yZLkfb-9wRj84-8GWCKS-2n8jstu-6QgfoF-2inCDp-6zMP7C-6Qgfj8-5Gp8TS-5dkemD-gX3Qy4-8gT5LH-oYvFJ-7hBXG8-agcUgm/

19.

Flickr.com is an image and video hosting service with its principal place of business located in San Francisco, California. Founded in 2005, Flickr.com became a popular online website for users to upload and share personal photographs in addition to a hosting website for images utilized by photograph

researchers and bloggers that are imbedded into blogs and other social media platforms.

20.

One of Flickr.com's features includes the ability for users who upload personal photographs to release such photographs to the general public under common usage licenses, specifically the Creative Commons licensing option for "all rights reserved".

21.

Pertinently, the Copyrighted Photograph included "© All rights reserved" as a Creative Commons' licensing feature on the Flickr.com website that Plaintiff selected when she uploaded the Copyrighted Photograph on July 28, 2006. The Copyrighted Photograph is on Plaintiff's Flickr.com account to this day.

22.

As further evidence of Plaintiff's original undertaking, an expanded image of the Copyrighted Photograph, attached hereto as **Exhibit D**, depicts Plaintiff's Flickr.com account with the relevant exchangeable image file metadata ("EXIF") for the Copyrighted Photograph.

23.

The EXIF metadata plainly shows that the Copyrighted Photograph was originally captured on June 22, 2006 with an Olympus "Stylus 300" Digital

Camera, manufactured by Olympus Optical Co., Ltd (the "Olympus Camera").
Plaintiff then modified the Copyrighted Photograph by cropping the image via
Adobe Photoshop CS2 Windows on June 26, 2006. Shortly thereafter, Plaintiff
uploaded the Copyrighted Photograph to her personal Flickr.com account on
July 28, 2006.

24.

Plaintiff physically possessed the Olympus Camera on June 22, 2006 and
personally captured the Copyrighted Photograph the same day.

25.

Plaintiff is the original and current owner of the Olympus Camera that
captured the Copyrighted Photograph. Indeed, Plaintiff still possess the
Olympus Camera to this day.

26.

Plaintiff has a Certificate of Registration for the Copyrighted
Photograph from the U.S Copyright Office with Registration Number VA 2-
367-866 and an effective date of October 24, 2023 (the "Certificate of
Registration"). A true and correct copy of the Certificate of Registration is
attached hereto as **Exhibit E**.

**B. DFJ Vinhos' infringement of the Copyrighted Photograph.**

27.

Upon information and belief, Mr. Dino Ventura ("Ventura") is one of DFJ Vinhos' original partners and considered a prominent sales and marketing individual who directs the exportation of DFJ Vinhos' wine products to the world.

28.

According to publicly available information, Ventura once observed British school children playing a traditional and physical game in the United Kingdom known as "Bulldog" (comparable to the game of "it" or "tag" in the United States). During the game of Bulldog, Ventura further observed the school children shouting "PAXIS" as a way to express immunity from being caught. Ventura adopted the term "PAXIS" for certain DFJ Vinhos wines to symbolize the escape from the stress of the world where one could appreciate great wine.

29.

Upon information and belief, in or about March of 2015, DFJ Vinhos engaged a creative artist to render a label for the "PAXIS" brand of wines sold by DFJ Vinhos.

30.

Ultimately, DFJ Vinhos decided to use a picture of a resting English bulldog (the "PAXIS Bulldog") epitomizing Ventura's interpretation of the term "PAXIS" he once observed in the game of Bulldog (the "PAXIS Label").

31.

A true and correct image of the PAXIS Label that appears on various wine products distributed by DFJ Vinhos is attached hereto as **Exhibit F**.

32.

Upon information and belief, DFJ Vinhos created an entire brand built upon the PAXIS Bulldog.

33.

An overlay examination of the PAXIS Label and the Copyrighted Photograph reveals that both are substantially the same image. For comparison, an overlay depiction of the PAXIS Label and the Copyrighted Photograph is attached hereto as **Exhibit G**.

34.

DFJ Vinhos admitted that it hired a creative artist based in the United Kingdom to search for online images of English bulldogs to create a coal pencil drawing of the image which would become the PAXIS Bulldog on the PAXIS Label.

35.

Therefore, DFJ Vinhos admits the PAXIS Label is a derivative work from an image found online.

36.

The Copyrighted Photograph has appeared online in a published form since July 28, 2006 and, for a significant period of time, a generic online search for "bulldog" yielded Plaintiff's Copyrighted Photograph as a top search result.

37.

The Copyrighted Photograph is nearly identical in proportion and scale to the coal pencil image that DFJ Vinhos uses as the PAXIS Label.

38.

According to its official website, DFJ Vinhos produces ten (10) million bottles of wine annually and 99% of its production is exported to more than fifty (50) countries around the world, including the United States and specifically in the State of Georgia and the Northern District.

39.

DFJ Vinhos also acknowledges on its official website that its PAXIS "Bulldog" tinto 2013 – V.R. Lisboa wine earned an award as the #5 Top Best Buy Wine of 2016 – an award given by *Wine Enthusiast*, one of the most reputable and prestigious magazines in the wine world and published in the United States.

40.

DFJ Vinhos did not have permission, license, or consent to use Plaintiff's Copyrighted Photograph as the source for the derivative PAXIS Bulldog on the PAXIS Label.

41.

Consequentially, DFJ Vinhos improperly copied, displayed, and distributed Plaintiff's Copyrighted Photograph by using the derivative PAXIS Label on its red, rosé, and white wine blend bottles, including all variations thereof, sold under the PAXIS "Bulldog" brand for commercial gain without compensation to Plaintiff.

**C. Plaintiff's discovery of DFJ Vinhos' infringement.**

42.

In or about April 2023, Plaintiff's husband, while at a Costco store located in the Northern District of Georgia, noticed a stack of boxed wine cases bearing an eerily similar label to a photograph he recalled that Plaintiff once captured and uploaded to her Flickr.com account.

43.

Plaintiff's husband took a picture of the boxed "PAXIS" wine cases. A true and correct copy of the photograph taken by Plaintiff's husband is attached hereto as **Exhibit H**.

44.

After Plaintiff's husband sent the picture shown in Exhibit G to Plaintiff, Plaintiff compared it with the Copyrighted Photograph and immediately recognized the PAXIS Bulldog as the same image of Brooklyn the Bulldog in the Copyrighted Photograph.

45.

On or about April 18, 2023, Plaintiff sent an Instagram message to Haulter comparing the Copyrighted Photograph with the PAXIS Bulldog.

46.

Haulter responded that she would reach out to a "lawyer friend" to ask for advice.

**D. Haulter's fraudulent lawsuit and infringement of the Copyrighted Photograph.**

47.

On or about May 18, 2023, Haulter, through an attorney, filed a copyright registration with the U.S. Copyright Office claiming ownership of the Copyrighted Photograph (the "False Haulter Copyright").

48.

The False Haulter Copyright is indexed under Registration Number VA 2-347-785. A true and correct copy of the Certificate of Registration for the False Haulter Copyright is attached hereto as **Exhibit I**.

49.

Haulter did not inform Plaintiff she intended to register the Copyrighted Photograph under her own name.

50.

Haulter is not the author or creator of the Copyrighted Photograph at issue in this litigation.

51.

Haulter does not and has never possessed the Olympus Camera that captured the Copyrighted Photograph.

52.

Haulter was not physically present at Plaintiff's residence on June 22, 2006 when the photographs of Brooklyn the Bulldog attached hereto as Exhibit A were taken by Plaintiff.

53.

Plaintiff has not transferred any property rights associated with the photographs in Exhibit A, including the Copyrighted Photograph, to Haulter nor anyone else.

54.

On or about June 22, 2023, Haulter electronically communicated to Plaintiff that a lawsuit would be filed "in the US Court" and "they will be served later this week."

55.

Plaintiff was led to believe that Haulter would be making a claim in her own name as the purported owner of the bulldog and not as the owner of the Copyrighted Photograph.

56.

On or about July 10, 2023, Haulter filed a "Complaint for Copyright Infringement" against DFJ Vinhos, *et al.*, in the United States District Court for the Middle District of Florida, Orlando Division with case number 6:23-cv-01279-WWB-LHP (the "Haulter Lawsuit").

57.

Haulter only named herself as a plaintiff in the Haulter Lawsuit.

58.

Haulter filed an "Amended Complaint for Copyright Infringement" in the Haulter Lawsuit on July 11, 2023.

59.

In the Haulter Lawsuit, Haulter alleged that she personally "created an original photograph entitled 'Brooklyn the English Bulldog Sleeping' " and alleged she created it "as the photographer."

60.

The photograph defined as the "Copyrighted Work" in the Haulter Complaint is a copied image from Plaintiff's personal webpage at www.lauralatham.com where Plaintiff also uploaded the Copyrighted Photograph.

61.

In fact, the "Copyrighted Work" in the Haulter Lawsuit (Exhibit J to the Amended Complaint) contains a watermark showing "2006.lauralatham.com" in the bottom right-hand corner.

62.

In Paragraph 19 of Haulter's Amended Complaint, she alleges that she "featured the 'Copyrighted Work' on her Flickr page on or about April 9, 2009" and referenced Exhibit J thereto.

63.

Haulter admitted the "Copyrighted Work" in the Haulter Lawsuit that she allegedly uploaded to Flickr.com displayed "Some Rights Reserved" as a hyper-link designation.

64.

Haulter does not have any legal rights whatsoever to her alleged "Copyrighted Work" nor Plaintiff's Copyrighted Photograph in this litigation which is the photograph Plaintiff captured on June 22, 2006.

65.

On or about July 24, 2023, Haulter electronically messaged Plaintiff that "[t]hey were served and I just got off the phone with the lawyer and they are filing a bunch of paperwork to have it moved to Portugal and out of the US. So, not ideal…."

66.

To the best of Plaintiff's recollection, July 24, 2023 is the first date she reviewed any of the pleadings in the Haulter Lawsuit online.

67.

Upon reviewing the Haulter Lawsuit, Plaintiff discovered the allegations contained therein for the first time.

68.

Plaintiff also discovered that no defendants had been served and no answers had been filed in the Haulter Lawsuit.

69.

Plaintiff assumed Haulter's representations that the case would be moved to Portugal were true and a new lawsuit would be filed.

70.

After not receiving any updates from Haulter for several weeks, Plaintiff again searched for the Haulter Lawsuit online on or about October 17, 2023.

71.

To Plaintiff's surprise, she found that a "Notice of Settlement" had been entered in the Haulter Lawsuit on October 10, 2023.

72.

Haulter never communicated nor mentioned any settlement agreement to Plaintiff at any time prior to Plaintiff's discovery of the same on or about October 17, 2023.

73.

Plaintiff did not agree, consent, nor authorize Haulter to enter into any agreements with DFJ Vinhos on Plaintiff's behalf.

74.

Haulter intentionally misled Plaintiff about the status and nature of the Haulter Lawsuit so that Haulter could claim all compensation for the Copyrighted Photograph under false pretenses and material misrepresentations.

75.

On October 20, 2023, Plaintiff's counsel contacted Haulter's counsel regarding the revelation of a settlement agreement between Haulter and DFJ Vinhos (the "Settlement Agreement").

76.

During the conversation with Haulter's counsel on October 20, 2023, Plaintiff's counsel was led to believe that no funds had been received from the Settlement Agreement.

77.

Subsequently, on the evening of October 20, 2023, Haulter's counsel emailed Plaintiff's counsel that counsel for DFJ Vinhos "is formally going to make a request of me that I return funds received to his firm's trust account."

78.

On October 23, 2023, Plaintiff's counsel held a conference call with DFJ Vinhos' counsel regarding the false allegations in the Haulter Lawsuit and the Settlement Agreement.

79.

During the October 23, 2023 conference call, Plaintiff's counsel learned that two out of four payments under the Settlement Agreement had already been made to Haulter.

80.

To date, Plaintiff's counsel has been refused access to the terms of the Settlement Agreement.

81.

Because Haulter does not own any rights to the Copyrighted Photograph, the amounts she has received under the Settlement Agreement constitute an infringement of Plaintiff's Copyrighted Photograph for commercial gain.

82.

On October 25, 2023, Plaintiff's counsel sent Haulter's counsel a formal demand letter instructing Haulter to, among other things, submit paperwork to the U.S. Copyright Office to cancel the False Haulter Copyright she registered for the Copyrighted Photograph and disgorge any funds she received relating to her false claim of ownership to the Copyrighted Photograph.

83.

Haulter not only refused to comply with Plaintiff's demands, Haulter continues to falsely claim (to this day) that she personally took the Copyrighted Photograph and owns all rights.

84.

Plaintiff now brings an action in her own name and rights against DFJ Vinhos and Haulter.

## COUNT ONE – COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) AGAINST DFJ VINHOS

85.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint as though fully stated herein.

86.

Plaintiff is the original author, creator, and source of the Copyrighted Photograph.

87.

Plaintiff has registered a valid copyright with the U.S. Copyright Office under Registration Number VA 2-367-866 covering the Copyrighted Photograph.

88.

The Berne Convention is the Convention for the Protection of Literary and Artistic Works, signed at Berne, Switzerland, on September 9, 1886, and includes all acts, protocols, and revisions thereto. 17 U.S.C. § 101.

89.

Portugal is a signatory to the Berne Convention thus subjecting DFJ Vinhos to the provisions thereof.

90.

Under the Berne Convention, Plaintiff is entitled to actual damages accruing from DFJ Vinhos' infringement of the Copyrighted Photograph in each country the PAXIS Bulldog wine brands have been distributed and sold.

91.

DFJ Vinhos performed all acts alleged in this Complaint in the course and scope of its commercial business activities with an intent to profit from the PAXIS Label and PAXIS "Bulldog" brand.

92.

DFJ Vinhos willfully, or at a minimum, recklessly infringed upon Plaintiff's Copyrighted Photograph with the intent to profit therefrom.

93.

As a direct and proximate cause of DFJ Vinhos' infringement, Plaintiff suffered monetary damages in an amount to be proven at the trial of this matter.

94.

In accordance with 17 U.S.C. § 504 (b), Plaintiff is entitled to recovery of her actual damages, including DFJ Vinhos' gross profits that are attributable to the infringement. Plaintiff is also entitled to an injunction against future use of the Copyrighted Photograph pursuant to 17 USC § 502.

## COUNT TWO – DECLARATORY JUDGMENT FOR INJUNCTIVE RELIEF AGAINST HAULTER

95.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint as though fully stated herein.

96.

As set forth above, Haulter is not the creator or author of Plaintiff's Copyrighted Photograph. Haulter was not present when Plaintiff took the Copyrighted Photograph, she did not suggest that Plaintiff take the Copyrighted Photograph, she did not advise as to how the Copyrighted Photograph should be staged, and she did not even know that Plaintiff took the Copyrighted Photograph until well after it was taken.

97.

On May 18, 2023, Haulter has registered the False Haulter Copyright with the US Copyright Office claiming that she is the author and creator of the Copyrighted Photograph.

98.

In doing so, Haulter falsely certified to the US Copyright Office that she is the author and owner of the exclusive copyright of the Copyrighted Photograph. Based on those false representations, the US Copyright Office issued a Certificate of Registration with Registration No. VA 2-347-785.

99.

Haulter filed a lawsuit in the Middle District of Florida against DFJ Vinhos falsely alleging that she created the Copyrighted Photograph in 2009.

100.

Upon information and belief, Haulter has represented to others that she is the creator of the Copyrighted Photograph. Upon information and belief, Haulter reached a settlement agreement with DFJ Vinhos whereby she falsely presented herself as the creator of the Copyrighted Photograph.

101.

Haulter has accepted money from DFJ Vinhos as part of the settlement with DFJ Vinhos.

102.

Plaintiff has registered her own copyright for the Copyrighted Photograph.

103.

This Court has authority to issue a declaratory judgment and injunctive relief on the issue of copyright infringement. This Court has authority to enjoin Haulter and require her to initiate proceedings to withdraw her alleged copyright of the Copyrighted Photograph with the US Copyright Office.

104.

Plaintiff respectfully requests that this Court declare that she is the true owner of the Copyrighted Photograph. Plaintiff further requests that this Court order Haulter to to withdraw her copyright claim with the US Copyright Office.

## COUNT THREE – COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) AGAINST HAULTER

105.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint as though fully stated herein.

106.

Plaintiff is the original author, creator, and source of the Copyrighted Photograph.

107.

Plaintiff has registered a valid copyright with the U.S. Copyright Office under Registration No. VA 2-367-866 covering the Copyrighted Photograph.

108.

Haulter willfully infringed upon Plaintiff's Copyrighted Photograph with the intent to profit therefrom.

109.

Haulter knowingly provided materially false information to the U.S. Copyright Office to register the Copyrighted Photograph in her own name.

110.

Haulter knowingly provided materially false information to DFJ Vinhos concerning the Settlement Agreement by claiming the Copyrighted Photograph as her own with the intent to profit therefrom.

111.

As a direct and proximate cause of Haulter's infringement, Plaintiff suffered monetary damages in an amount to be proven at the trial of this matter.

112.

In accordance with 17 U.S.C. § 504 (b), Plaintiff is entitled to recovery of her actual damages, including Haulter's gross profits that are attributable to the infringement.

113.

Haulter knew that she did not own any rights to the Copyrighted Photograph and falsely represented that she did to the United States District

Court, U.S. Copyright Office, and DFJ Vinhos in a willful attempt to profit from Plaintiff's Copyrighted Photograph.

114.

Therefore, in accordance with 17 U.S.C. § 504(c), Plaintiff is alternatively entitled to recovery of statutory damages against Haulter as a consequence of Haulter's willful infringement in an amount of $150,000.

115.

In accordance with 17 U.S.C. § 505, Plaintiff is entitled to recovery of her attorneys' fees and expenses of litigation against Haulter.

## COUNT FOUR – ATTORNEYS' FEES AND EXPENSES OF LITIGATION AGAINST HAULTER

116.

Plaintiff realleges and incorporates by reference paragraphs 1 through 84 of this Complaint as though fully stated herein.

117.

Haulter has acted in bad faith, been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11.

118.

Therefore, Haulter is liable for Plaintiff's reasonable attorneys' fees and expenses of litigation incurred through final disposition of this matter in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in her favor against Defendants as follows:

(a) Declare the Haulter Copyright invalid, null, and void with direction to cancel the same on file with the U.S. Copyright Office;

(b) Award Plaintiff her actual damages and Defendants' profits attributable to copyright infringement against Defendants, individually or collectively;

(c) Alternatively award Plaintiff statutory damages against Defendants, individually or collectively, for willful copyright infringement;

(d) Enjoin Defendants from appropriating Plaintiff's Copyrighted Photograph, including the immediate removal of the Copyrighted Work from all advertisements within Defendants' custody or control;

(e) Enter an order cancelling Registration Number VA 2-347-785 on file with the U.S. Copyright Office;

(f) Award Plaintiff all interest, including prejudgment and post-judgment interest, on monetary amounts owed according to law; and

(g) Award such other and further relief as the Court deems just and proper.

Respectfully submitted this the 28th day of March, 2024.

*/s/Nicholas Sears*
Bryan M. Knight
Georgia Bar No. 142401
Jonathan M. Palmer
Georgia Bar No.
Nicholas Sears
Georgia Bar No.
W. Lawton Jordan
Georgia Bar No. 119651

*Attorneys for Plaintiff*

KNIGHT PALMER, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightpalmerlaw.com
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com
ljordan@knightpalmerlaw.com